IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


TIMBERLINE MOUNTAIN OPERATIONS, LLC,
TIMBERLINE PROPERTY MANAGEMENT, LLC, and
VALLEY SCENIC VIEW, LLC,

      Plaintiffs,

  v.                                 CIVIL NO. 2:25-CV-19
                                            (KLEEH)

THE COUNTY COMMISSION OF
TUCKER COUNTY,

      Defendant.


MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 5]

Pending before the Court is a motion to dismiss filed by the Defendant, the County Commission of Tucker County, West Virginia ("TCC").  For the reasons discussed below, the motion is **DENIED**.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

The Plaintiffs, Timberline Mountain Operations, LLC, Timberline Property Management, LLC, and Valley Scenic View, LLC (together, "Plaintiffs"), filed their original complaint for declaratory judgment against TCC on August 13, 2025.  See ECF No. 1.  They filed an amended complaint on August 14, 2025.  See ECF No. 3.  In the amended complaint, Plaintiffs ask the Court to invalidate all or part of Tucker County's emergency ambulance fee ordinance (the "Ordinance").

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO DISMISS [ECF NO. 5]

In the amended complaint, Plaintiffs assert the following claims:

> (1)    In Count One, that TCC's additional 2% hotel/lodging ad valorem tax exceeds the 6% maximum under state code;[1]

> (2)    In Count Two, that the Ordinance violates the Commerce Clause of the United States Constitution; and

> (3)    In Count Three, that the Ordinance does not comply with the Emergency Ambulance Act.

On September 16, 2025, TCC filed a motion to dismiss. See ECF No. 5. It is fully briefed and ripe for review. The Court held a hearing on the motion on January 7, 2026.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (citations omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citation omitted).

---

[1] Plaintiffs assert that Tucker County has already imposed the maximum 6% occupancy tax on hotels. See Am. Compl., ECF No. 3, at 3.

**TIMBERLINE V. TCC**                                          **2:25-CV-19**

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Factual allegations must be sufficient "to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 545. Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). Dismissal is appropriate only if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969) (citation omitted).

### III. BACKGROUND

**Emergency Ambulance Service Act of 1975**

In West Virginia, "[c]ounty commissions have no inherent authority to levy taxes and have only that authority expressly granted to them by the Legislature." W. Va. Code § 7-22-9(a). In 1975, the West Virginia Legislature (the "Legislature") enacted

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

the Emergency Ambulance Service Act of 1975, which empowered county commissions to "impose upon and collect from the users of emergency ambulance service within the county a special service fee, which shall be known as the 'special emergency ambulance service fee.'" Id. § 7-15-17.

### West Virginia Hotel Occupancy Tax

In 1985, the Legislature empowered counties and municipalities to "impose and collect a privilege tax upon the occupancy of hotel rooms located within [their] taxing jurisdiction[s]." Id. § 7-18-1(a).[2] Since 2007, the maximum rate for a hotel tax by a county has been 6%. See id. § 7-18-2(b).

### The 2024 Tucker County Ambulance Fee Ordinance

The Ordinance became effective on January 31, 2025. See Ordinance, ECF No. 3-1, at 8. Article Two of the Ordinance establishes the Special Emergency Ambulance Service Fee:

> Each Special Emergency Ambulance Service Fee imposed under this Ordinance shall be for Tucker County emergency ambulance services for a fiscal year beginning July 1st through June 30th.
>
> The Special Emergency Ambulance Service Fee shall be two percent (2%), imposed on all

---

[2] "Hotel" is defined as "any facility, building, or buildings, publicly or privately owned (including a facility located in a state, county, or municipal park), in which the public may, for a consideration, obtain sleeping accommodations. The term includes, but is not limited to, boarding houses, hotels, motels, inns, courts, condominiums, lodges, cabins, and tourist homes. The term 'hotel' includes state, county, and city parks offering accommodations as herein set forth." W. Va. Code § 7-18-3(c).

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

> sales, short-term rentals, admissions, fees
> and covers as described [in Article One] paid
> by any individual user to be collected by all
> individuals or businesses within Tucker County
> as specified in the determination of Special
> Emergency Ambulance Service Fee, less
> exemptions.

Id. at 5.  In Article One, the Ordinance defines the "Special Emergency Ambulance Fee" as follows:

> A two percent (2%) fee to be collected by any
> business or individual located within Tucker
> County from any individual user that engages
> in any one or more of the following types of
> amusement, entertainment and/or recreational
> activities as previously defined.  The
> activities include, but are not limited to,
> the following:
>
> 1.  All recreational and amusement
>     activities including the rental of
>     equipment in use of said activities,
>     whether indoor or outdoor such as:
>
>     • Short-term rentals such as:
>       hotel/motel, cabin,
>       condominium, AirBnb, VRBO or
>       private rentals;
>
>     • RV or tent camping;
>
>     • Boat, paddle boat, kayak,
>       canoe, floating tube rental;
>
>     • ATV, UTV, motorcycle, bicycle
>       rental;
>
>     • Bus excursions, charters;
>
>     • Downhill ski
>       equipment/clothing rental, ski
>       lift fees;

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

- Cross-country ski equipment/clothing rental, fees;

- Sledding, tubing, ice skating;

- Snowboarding fees, lift tickets, equipment/clothing rental;

- Scenic chair lift rides;

- Swimming, tennis, pickleball, court and equipment rentals;

- Guided hunting or fishing excursions and clothing/equipment rental;

- Zip line, rock climbing, paddle boarding, horseback riding, skeet shooting, paintball and other similar outdoor adventure activities and clothing/equipment rental for the same;

- Virtual Reality and/or AI gaming fees;

- Putt-putt golf;

- Golfing and golf cart rental fees; and

2. Any and all admission charges or cover fees including, but not limited to, music events and/or concerts, comics, movies, plays, professional sports or gaming events; mud bogs or

> motorcycle/ATV/4-wheel drive racing
> or trail riding.

Id. at 3-4.  In Article One, the Ordinance also lists the following exemptions:

> Registered non-profit organizations are exempted from this Ordinance; more specifically exempted are volunteer fire departments, schools, churches, senior centers, Tucker County Fair, Tucker County 4H, and Tucker County Animal Shelter.

Id. at 5.

According to data from the Tucker County Ambulance Authority, there were a total of 1,346 emergency ambulance unit responses in 2024.  Am. Compl., ECF No. 3, at 6.  During that period, the largest hotels and recreational centers (Timberline Mountain, Canaan Valley Lodge, and Blackwater Lodge) were responsible for a combined total of 70 emergency ambulance unit responses.  Id. at 6-7.  On the other hand, a single senior center in Tucker County accounted for at least 213 emergency ambulance unit responses. Id. at 7.  Various medical facilities accounted for 94 ambulance unit responses, and three other senior apartment complexes collectively accounted for 75 ambulance unit responses.  Id.  There were 17 ambulance unit responses to the Tucker County High School football field, and nearly 24 private residences were responsible for over 10 ambulance unit responses.  Id.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

### IV.  DISCUSSION

In the motion to dismiss, TCC argues that Count Two, the dormant Commerce Clause claim, is insufficiently pled under Rule 12(b)(6).  TCC argues that the Court should dismiss Count Two and choose not to exercise supplemental jurisdiction over the remaining state law claims.  For the reasons discussed below, the Court finds that Count Two is sufficiently pled, and the Court will exercise supplemental jurisdiction over the remaining claims.

### A.    Dormant Commerce Clause (Count Two)

TCC argues that the Ordinance does not violate the dormant Commerce Clause because it applies solely to activities engaged in by individuals within a single county in a single state.  It also argues that the Ordinance requires only local enterprises to collect the emergency ambulance fee from their customers.  In response, Plaintiffs argue that the Ordinance is not exclusively local, and even if it were, exclusively local or intrastate activity can be subject to Commerce Clause scrutiny.

The Commerce Clause of the United States Constitution provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce . . . among the several States[.]"  U.S. Const., Art. I, § 8, cl. 3.  "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

discriminate against or burden the interstate flow of articles of commerce." Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or., 511 U.S. 93, 98 (1994) (citations omitted).

"The dormant Commerce Clause restrains 'the several States' by limiting 'the power of the States to erect barriers against interstate trade.'" McBurney v. Young, 667 F.3d 454, 468 (4th Cir. 2012) (citation omitted). It "is exclusively designed to address the 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" Colon Health Ctrs. of Am., LLC v. Hazel, 813 F.3d 145, 154 (4th Cir. 2015) (citation omitted). "The [Supreme] Court has . . . rejected any suggestion that a state tax or regulation affecting interstate commerce is immune from Commerce Clause scrutiny because it attaches only to a 'local' or intrastate activity." Commonwealth Edison Co. v. Montana, 453 U.S. 609, 615 (1981) (citations omitted).

The "first step in analyzing any law subject to judicial scrutiny under the negative Commerce Clause is to determine whether it regulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce." Oregon Waste, 511 U.S. at 99 (citations and internal quotation marks omitted). "[D]iscrimination" in this context "means differential treatment of in-state and out-of-state

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

economic interests that benefits the former and burdens the latter." Id. "If a restriction on commerce is discriminatory, it is virtually per se invalid." Id. (citations omitted). "By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" Id. (citing Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)). "[A] state law is not discriminatory because it will apply most often to out-of-state entities in a market that has more out-of-state than in-state participants." Just Puppies, Inc. v. Brown, 123 F.4th 652, 667 n.9 (4th Cir. 2024) (citations and internal quotation marks omitted).

"[O]ne of the central purposes of the [dormant Commerce] Clause was to prevent States from 'exacting more than a just share' from interstate commerce." Oregon Waste, 511 U.S. at 102 (citations omitted). "It is well established . . . that a law is discriminatory if it taxes a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." Id. (citations and internal punctuation omitted). A State may not "impose a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business, . . . or by subjecting interstate commerce to the burden of multiple taxation[.]" Northwestern States Portland Cement Co.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

v. Minnesota, 358 U.S. 450, 458 (1959) (citations and internal quotation marks omitted).  "For over 150 years," the Supreme Court has "concluded that the imposition of a differential burden on any part of the stream of commerce — from wholesaler to retailer to consumer — is invalid[.]"  Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 580 (1997) (citation omitted).

In Camps Newfound, Maine enacted a statute creating a general exemption from real estate and personal property taxes for "benevolent and charitable institutions" incorporated in Maine. Id. at 568.  The statute, however, provided that institutions "conducted or operated principally for the benefit of persons who are not residents of Maine" qualified only for a more limited tax benefit.  Id.  The operator of a church camp serving primarily out-of-state residents (95% out-of-state) challenged the constitutionality of the statute. Id. at 568-69, 573.  The statute failed scrutiny under the Commerce Clause. Id. at 580-81.  The Supreme Court recognized that the tax burden was "imposed on the out-of-state customer indirectly by means of a tax on the entity transacting business with the non-Maine customer."  Id. at 580. It wrote that the burden was "felt almost entirely by out-of-staters, deterring them from enjoying the benefits of camping in Maine."  Id. at 581.  The Court found that such prohibitions on out-of-state access to in-state resources encourage economic

11

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

isolationism and "serve the very evil that the dormant Commerce Clause was designed to prevent." Id. at 578.  It wrote, "As a practical matter, the statute encourages affected entities to limit their out-of-state clientele, and penalizes the principally nonresident customers of businesses catering to a primarily interstate market." Id. at 576.  The Camps Newfound Court also wrote,

> Summer camps are comparable to hotels that offer their guests goods and services that are consumed locally.  In Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 13 L. Ed. 2d 258, 85 S. Ct. 348 (1964), we recognized that interstate commerce is substantially affected by the activities of a hotel that "solicits patronage from outside the State of Georgia through various national advertising media, including magazines of national circulation." Id., at 243.  In that case, we held that commerce was substantially affected by private race discrimination that limited access to the hotel, and thereby impeded interstate commerce in the form of travel. Id., at 244, 258.

Id. at 573.

Here, Timberline has proffered that 75% of those who engage in recreational activities at Timberline are from out of state. Am. Compl., ECF No. 3, at ¶ 9.  The Ordinance also explicitly excludes a number of local organizations from its application. See Ordinance, ECF No. 3-1, at 5.  If, for example, Tucker County 4H wanted to host a recreational activity, which would presumably

12

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS [ECF NO. 5]**

be primarily attended by Tucker County residents, the tax would not apply.  If Timberline, Canaan, or Blackwater Falls wanted to host a recreational activity, which would presumably be attended by out-of-state tourists, the tax would apply.  Timberline has pled that most of its customers "buy digital ski lift passes, equipment rentals, and hotel reservations before traveling to Tucker County."  Am. Compl., ECF No. 3, at ¶ 9.

This case, as pled, is similar to Camps Newfound, in which Maine engaged in discriminatory taxation of Maine charities operating primarily to serve out-of-state residents.  The tax burden is "imposed on the out-of-state customer indirectly by means of a tax on the entity transacting business with the non-[West Virginia] customer."  Camps Newfound, 520 U.S. at 580.  The burden is "felt almost entirely by out-of-staters, deterring them from enjoying the benefits of" recreating in Tucker County, West Virginia.  Id. at 581.  This amounts to a discouragement of "out-of-state access to in-state resources" and the same type of economic isolationism that was found invalid in Camps Newfound. Id. at 578.  As pled, to quote from Plaintiffs' brief, the Ordinance "confer[s] the benefits of an emergency ambulance service upon residents and visitors alike, but plac[es] the . . . burden of an emergency ambulance service user fee almost

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

entirely upon the visitors by selectively taxing the very activities that draw them to visit." Resp., ECF No. 8, at 10.

TCC asserts that this case is similar to American Trucking Associations, Inc. v. Michigan Public Service Commission et al. because the tax applies evenhandedly. The Court disagrees. In American Trucking, the State of Michigan imposed a flat fee upon trucks undertaking point-to-point hauls between Michigan cities. 545 U.S. 429, 431 (2005). The petitioners argued that the statute discriminated against interstate carriers and imposed an unconstitutional burden upon interstate trade. Id. at 432. The Supreme Court wrote found that the "neutral" flat assessment did not unfairly discriminate against interstate truckers. Id. at 434–35. The Ordinance at issue here is distinctly different. The Ordinance's definition of "users" is not neutral and is not connected to a population who actually uses ambulance services. The Ordinance, rather, focus on tourism-based activities and the exempts activities presumably attended by Tucker County residents. The Ordinance excludes senior centers from its application, which is evidence of discrimination, given the amount of ambulance services used by their residents. Moreover, to the extent TCC argues that the taxed activities are all recreational, hotels are unrelated to recreation, and their inclusion in the tax is, at least arguably, evidence of discrimination as well. In short, the

14

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

Ordinance defines "users" of ambulance services in a way that disproportionately imposes the tax on out-of-state individuals. The factual allegations here have raised Plaintiffs' right to relief above the speculative level. See Twombly, 550 U.S. at 545. For these reasons, the Court finds that Count Two is sufficiently pled.

**B.    Supplemental Jurisdiction**

Where "the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  Because the Court has denied the motion to dismiss Count Two, the motion is also denied with respect to the remaining claims.

**V.    CONCLUSION**

For the reasons discussed above, the motion to dismiss is **DENIED** [ECF No. 5].  The motion to stay discovery is **DENIED AS MOOT** [ECF No. 21].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

**TIMBERLINE V. TCC**                                    **2:25-CV-19**

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS [ECF NO. 5]**

DATED: March 17, 2026

_Tom S Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA